# CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

### COUNSELORS AT LAW

Ten Post Office Square, Boston, Massachusetts 02109

THOMAS E. PEISCH
BOB B. ROSENTHAL
JAMES F. KAVANAUGH, JR.
RUSSELL F. CONN
GEORGE M. FORD
JAMES B. PELOQUIN
BARRY E. GOLD
THOMAS J. GALLITANO
JAMES GRAY WAGNER
ERIN K. HIGGINS
STEVEN E. GURDIN
MICHAEL T. SULLIVAN
CONSTANCE M. MCGRANE

Tel: (617) 482-8200
Fax: (617) 482-6444

WRITER'S DIRECT DIAL: 617-348-8215
E-MAIL: JLABOVITZ@CKRPF.COM

April 12, 2005

KURT B. FLIEGAUF
RONALD M. JACOBS
CAROL A. STARKEY
JENNIFER M. NORTON
SARA L. GOODMAN
MICHAEL R. BERNARDO
JACOB A. LABOVITZ
CARA A. FAUCI
JOHANNA L. MATLOFF
AMY C. STEWART
BETH NUZZO NEWMARK
SARAH E. WEBER

*Via Hand Delivery*

Clerk of Court, Civil
United States District Court
  for the District of Massachusetts
One Courthouse Way
Boston, MA 02210

> RE:    Powercard Export Corp. v. Diebold, Inc.
>         Civil Action No.:  05-cv-10593

Dear Sir/Madam:

Pursuant to Local Rule 81.1 and in connection with the Notice of Removal filed on March 28, 2005, I have enclosed for filing certified copies of all records and proceedings in Middlesex Superior Court, as well as all docket entries, for the above-referenced matter.

Thank you for your attention to this filing.

Sincerely,

Jacob A. Labovitz

JAL:2130-00
Enclosures
cc:    John P. Connelly, Esquire (w/encl.)
        Thomas M. Henry, Esquire (w/encl.)
        Thomas E. Peisch, Esquire

224538.1



FILED
CLERK'S OFFICE

2005 MAR 28  A 10: 56

DISTRICT COURT
DISTRICT OF MASS.

I hereby certify on 3/28/05 that the
foregoing document is true and correct copy of the
electronic docket in the captioned case
electronically filed original filed on
original filed in my office on 3/28/05
Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By:
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05 10593 PBS

POWERCARD EXPORT CORP.,    )
    )
    Plaintiff,    )    Civil Action No. _____
    )
v.    )
    )
DIEBOLD, INCORPORATED,    )
    )
    Defendant.    )
    )

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1441, Defendant Diebold, Incorporated hereby gives notice of

removal of this action from the Middlesex Superior Court, Commonwealth of Massachusetts, to

this Court. As grounds for removal, Defendant states as follows:

**A.    Factual and Procedural Background**

1.    Diebold, Incorporated ("Diebold") is a defendant in a civil action filed in, and

presently pending before, the Middlesex Superior Court, Commonwealth of Massachusetts,

styled as *Powercard Export Corp. v. Diebold, Incorporated*, Case No. 05-0695 (the "State Court

Action").

2.    Plaintiff Powercard Export Corp ("PEC") alleges that Diebold breached contracts

with PEC, breached implied covenants of good faith and fair dealing, interfered with contractual

relations, misappropriated confidential information, and engaged in unfair and deceptive acts or

practices and unfair methods of competition. (Complaint, Counts I-V.)

3.    The Complaint in the State Court Action ("Complaint") was filed on March 1,

2005.

4.    Diebold received a copy of the summons and the Complaint in the State Court Action on or after March 3, 2005, by letter sent via certified mail by plaintiff's counsel to 5995 Mayfair Road, North Canton, Ohio.

5.    This Notice of Removal is being filed with this Court within thirty (30) days after Diebold received a copy of the summons and Complaint setting forth PEC's claims. Therefore, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

6.    As required by 28 U.S.C. § 1441(b), no citizen of the Commonwealth of Massachusetts has been joined and served as a Defendant.

**B.    Diversity Jurisdiction of this Court**

7.    Plaintiff PEC is a Delaware corporation with its principal place of business in the Commonwealth of Massachusetts. (Complaint ¶ 1.) It is therefore a citizen of the state of Delaware and the Commonwealth of Massachusetts.

8.    Defendant Diebold is an Ohio corporation with its principal place of business in the state of Ohio. It is therefore a citizen of the state of Ohio.

9.    Each plaintiff is therefore a citizen of a different State than each defendant.

10.    The amount in controversy exceeds $75,000. Massachusetts law prohibits a plaintiff from specifying in its complaint the amount of monetary damages it is seeking, unless such damages are "liquidated or ascertainable by calculation." Mass. Gen. Laws ch. 231, § 13B (2005). Accordingly, the Complaint does not specifically state the amount of damages PEC is seeking in this litigation. PEC does allege, however, that its "projected value of over $21,000,000 will never be realized due to the actions taken by Diebold." (Complaint ¶ 11.) PEC further states that its "damages include its uncompensated time and expenses, value of misappropriated proprietary information and lost market opportunities and profits." (*Id.*)

Moreover, PEC is seeking "at least double, and up to treble, its damages." (*Id.* ¶ 30.) Therefore, as made clear by the claims in the Complaint, the damages sought by PEC put the amount in controversy in this case in excess of the jurisdictional minimum.

11.    This Court, therefore, has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the State Court Action presents a case where the amount in controversy exceeds the sum or value of $75,000 and is between citizens of different States.

**C.    Removal**

12.    Pursuant to 28 U.S.C. §§ 1332, 1367, 1441 and 1446, removal of the State Court Action is appropriate. Under 28 U.S.C. §§ 1332 and 1441, Diebold's right of removal applies to the entire lawsuit.

13.    Venue of this removed action is proper in this Court under 28 U.S.C. § 1441(a) as the district and division embracing the place where the State Court Action is pending.

14.    A copy of all process, pleadings and orders received by Diebold in the State Court Action to date is being filed as Exhibit 1 to this Notice of Removal.

15.    Written notice of the filing of this Notice of Removal is being served on PEC's counsel on this date.

16.    Diebold will promptly file a copy of this Notice with the Clerk of the Middlesex Superior Court, Commonwealth of Massachusetts, as required by 28 U.S.C. § 1446(d).

17.    Diebold reserves all defenses to PEC's claims and damage allegations. Moreover, Diebold expressly preserves, and does not waive, any of the defenses available under Fed. R. Civ. P. 12(b), including, without limitation, lack of personal jurisdiction, improper/inconvenient venue and insufficiency of service of process.

WHEREFORE, Defendant Diebold, Incorporated hereby removes this civil action to the

United States District Court for the District of Massachusetts.

Dated: March 28, 2005                              Respectfully submitted,

                                                   Thomas E. Peisch, BBO #393260
                                                   Jacob A. Labovitz, BBO # 646967
                                                   CONN KAVANAUGH ROSENTHAL
                                                   PEISCH & FORD, LLP
                                                   Ten Post Office Square
                                                   Boston, MA 02109
                                                   Telephone:  (617) 482-8200
                                                   Facsimile:  (617) 482-6444

                                                   *Attorneys for Defendant Diebold, Incorporated*

                                                   OF COUNSEL:
                                                   John M. Majoras
                                                   Thomas M. Henry
                                                   JONES DAY
                                                   51 Louisiana Avenue, N.W.
                                                   Washington, DC 20001-2113
                                                   Telephone:  (202) 879-3939
                                                   Facsimile:  (202) 626-1700

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing NOTICE OF REMOVAL has been served by

hand delivery and U.S. Mail, postage pre-paid, upon the following counsel of record on this the

28th day of March, 2005:

John P. Connelly, Esq.
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110
(Attorneys for Plaintiff)

223146.1

**PEABODY & ARNOLD** LLP
COUNSELLORS AT LAW

30 ROWES WHARF, BOSTON, MA 02110
[617] 951.2100  FAX [617] 951.2125

BOSTON, MA    PROVIDENCE, RI

JOHN P. CONNELLY
[617] 617.951.2038
jconnelly@peabodyarnold.com

March 3, 2005

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Michael J. Hillock, President
Diebold, Incorporated
5995 Mayfair Road
North Canton, OH 44720

     Re:    Powercard Export Corp. v. Diebold, Incorporated,
           Middlesex Superior Court, Civil Action No. 05-0695

Dear Mr. Hillock:

     I have enclosed copies of the Summons and Verified Complaint hereby served upon Diebold, Incorporated as the named defendant pursuant to the laws of the Commonwealth of Massachusetts relating to the above-captioned lawsuit filed on March 1, 2005 in the Middlesex County Superior Court in Cambridge, Massachusetts.

     Very truly yours,

     John P. Connelly

Enclosures

609211

cc:    John M. Majoras, Esquire (with enclosures)
       Gilbert D. Beinhocker, Esquire (with enclosures)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CIVIL ACTION
NO.

05-0695



POWERCARD EXPORT CORP.,

Plaintiff,

v.

DIEBOLD, INCORPORATED,

Defendant.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
COUNTY OF MIDDLESEX

MAR 0 1 2005

Edward J. Sullivan

CLERK

## VERIFIED COMPLAINT

### PARTIES

1.      The plaintiff Powercard Export Corp. ("PEC") is a Delaware corporation and with a principal place of business at 35 Corporate Drive, Suite 400, Burlington, Massachusetts.

2.      The defendant Diebold, Incorporated ("Diebold") is, upon information and belief, an Ohio corporation and with a principal place of business at 5995 Mayfair Road, North Canton, Ohio. Diebold owns and operates several subsidiaries and divisions both in the United States and foreign countries, including, but not limited to, Diebold International, all of which subsidiaries and divisions are collectively referred to herein as "Diebold". Diebold regularly does business in Massachusetts, and so this Court has jurisdiction over Diebold pursuant to G.L. c.223A, § 3.

### FACTS

3.      PEC was incorporated in December, 2002 as a small, start-up business integration catalyst company that was established solely to develop and implement automated teller machine ("ATM") market deployment strategies within the Russian retail market. From January, 2003 to

July, 2004, PEC was a customer of Diebold, an international, multi-billion dollar company engaged, among other things, in the business of manufacturing and selling ATMs.

4.    During 2003, PEC's primary contract with Diebold was through Diebold's office in Marlborough, Massachusetts, including Gary Naresky, James Logan and Michael Roy. PEC's program was to bring to Russia an ATM based automated clearing house system that operated independently from banks. PEC's business model was designed after the NYCE model, which started as an ATM network in the United States and has evolved over the past twenty years from principally bank centric to retail centric. PEC's principals have had extensive experience conducting business in Russia, and PEC hired its own Russian staff, and obtained Russian partners, in order to implement its program.

5.    PEC entered into a Non-Disclosure Agreement with Diebold effective March 19, 2003 pursuant to which PEC provided to Diebold proprietary information concerning PEC's business plans and strategies, self-service usage, financing and information relating to integration activity, and information relating to PEC's contacts in Russia. Diebold delivered to PEC a deployment plan for ATMs manufactured by Diebold called Optevas, and on July 28, 2003 PEC entered into a consulting agreement with Diebold's subsidiary, Verdi & Company, to assist in the implementation of PEC's program.

6.    In August, 2003, Mr. Naresky from Diebold's office in Marlborough, Massachusetts prepared a Memorandum Of Agreement on Diebold's standard form for the sale of 498 Opteva 720s from Diebold to PEC for a purchase price of $14,505,131.20. This Memorandum Of Agreement was represented by Diebold to PEC as a valid purchase agreement. PEC signed the Memorandum Of Agreement on August 13, 2003 and returned it to Diebold, which accepted it without reservation. However, several months later, Diebold abruptly and

unilaterally transferred the matter to its European operation headed by Cliff Meinhardt, and Mr. Meinhardt thereafter informed PEC that Diebold would not perform under the terms of the Memorandum Of Agreement.

7.    Shortly before Mr. Meinhardt became involved for Diebold, PEC also entered into an agreement with Diebold's office in Marlborough, Massachusetts to purchase 160 used 1064ix ATMs for resale to STB Card, which was a Russian bank processing center with whom PEC was working closely at the time. PEC had entered into a resale agreement with STB Card for the used Diebold ATMs, which would have been a profitable transaction for Diebold, PEC and STB Card. However, Mr. Meinhardt wrongfully interfered with PEC's agreement with STB Card with his letter to STB Card dated October 28, 2003. In that letter, which Mr. Meinhardt sent without PEC's knowledge to PEC's customer, STB Card, Mr. Meinhardt stated that PEC was not authorized to resell the Diebold 1064ix ATMs to STB Card, which statement was false and made with the sole purpose and intent of harming PEC. STB Card cancelled its agreement with PEC because of Mr. Meinhardt's actions.

8.    Diebold received and accepted from PEC a memorandum of understanding whereby Diebold and PEC were to become equity partners in a new company ("NewCo") to be formed to originate and develop an automated clearing house ("ACH") national cash payment network based on Opteva 720 ATMs in Russia. Diebold modified that memorandum understanding whereby Diebold agreed to take a ten percent (10%) equity stake in NewCo. Diebold did so knowing that PEC would be taking that memorandum of understanding to potential investors, which in fact happened and in fact precipitated a firm commitment letter from Apex Emerging Markets Finance ("Apex") to bring $1.2 million in equity based on Diebold being identified as an owner and principal to NewCo under the terms of the

memorandum of understanding as modified by Diebold. Then at a much later date, after substantial time and expense incurred by PEC in reliance on the memorandum of understanding agreed to and modified by Diebold, Diebold tried to alter unilaterally its equity investment by replacing it with an onerous debt financing. Diebold did this knowing that it would cause the deal to fall through, which is what Diebold wanted so that it could appropriate for itself PEC's proprietary information.

9.    Diebold received a key PEC business plan at a presentation by Apex in Moscow in February, 2004. This was in addition to other substantial proprietary information which Cliff Meinhardt of Diebold received along with Diebold personnel in its Marlborough, Massachusetts office. Mr. Meinhardt received the benefit of valuable strategic analysis in marketing away from the traditional banking sector, along with detailed operating plans and proprietary documents from PEC's Russian partners in developing the retail ATM market. Mr. Meinhardt reneged on the promise which he had made to carry over the non-disclosure agreement to Diebold's Russian company which was previously signed by Diebold's American company.

10.    PEC introduced Diebold to a significant group of large size companies, such as Monsenergo-TransInvestbank, Russian's largest utility, which PEC believes Diebold's Russian operation has used, is using and will be using as a platform to sell ATMs to large Russian banks visiting to move into the retail ATM business. Diebold is doing all this to the great damage of PEC. On the other hand, Diebold introduced PEC to not one single contact.

11.    The damages incurred by PEC as a result of Diebold's wrongful actions are substantial. PEC's projected value of over $21,000,000 will never be realized due to the actions taken by Diebold. PEC's damages include its uncompensated time and expenses, value of

misappropriated proprietary information and lost market opportunities and profits, all due to the wrongful actions taken by Diebold towards PEC.

COUNT I
(Breach of Contract)

12.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, supra.

13.    The conduct of Diebold, as hereinbefore alleged, constitutes a breach of its contracts with PEC, including, but not limited to, non-disclosure contracts and contracts to sell equipment.

14.    As a direct and proximate result of Diebold's breaches of contracts, PEC has suffered damages.

COUNT II
(Breach of Implied Covenant of Good Faith and Fair Dealing)

15.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13 and 14, supra.

16.    The contracts which PEC had with Diebold contained implied covenants of good faith and fair dealing.

17.    At all times, PEC dealt fairly with Diebold and has not breached any of the contracts in any way.

18.    Diebold's breaches of contract, interference with PEC's business and other relations and co-opting of PEC's proprietary information were in bad faith and were without cause, and were breaches of the implied covenant of good faith and fair dealing implicit in the contracts because Diebold sought to deprive PEC of accrued and earned benefits of those contracts.

5

19.    As a direct result of Diebold's breach of the implied covenant of good faith and fair dealing implicit in the contracts, PEC has been and continues to be deprived of accrued and earned benefits of those contracts.

## COUNT III
### (Interference with Contractual Relations)

20.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13, 14 and 16 through 19, supra.

21.    PEC had contractual and business relationships with Russian entities, including, but not limited to, STB Card, with the intended result of bringing economic benefit to PEC.

22.    Diebold had actual knowledge of PEC's contractual and business relationships with Russian entities, including, but not limited to, STB Card.

23.    Diebold intentionally interfered with those relationships, and as a result of Diebold's interference, PEC has been harmed and has incurred damages.

## COUNT IV
### (Misappropriation of Confidential Information)

24.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, supra.

25.    Upon information and belief, Diebold has disclosed or will disclose to others PEC's confidential information, and Diebold has used and is using PEC's confidential information.

26.    The disclosure and use of such information by Diebold is in violation of the Non-Disclosure Agreement entered into by and between PEC and Diebold, as well as a violation of statutory and common law.

<u>COUNT V</u>
(Violation of G.L. c.93A)

27.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13, 14, 16 through 19, 25 and 26, <u>supra</u>.

28.    Diebold is engaged in trade or commence as defined by G.L. c.93A, § 1.

29.    The actions of Diebold, as hereinbefore alleged, constitute unfair and deceptive acts or practices and unfair methods of competition on violation of G.L. c.93A, §§ 2 and 11 which have caused, and will have the effect of causing, PEC to suffer injury of its business.

30.    The use by Diebold of the aforesaid unfair and deceptive acts or practices and unfair methods of competition were, and are, willful and knowing violations of G.L. c.93A, thereby entitling to PEC to at least double, and up to treble, its damages, as well as reasonable attorneys' fees and costs.

WHEREFORE, PEC respectfully requests that this Court enter judgment for PEC and against Diebold in an amount to be determined at trial, which amount should be trebled pursuant to G.L. c.93A, §11, plus interest, costs and attorneys' fees, together with such additional or alternative relief as this Court deems to be just and proper.

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

PLAINTIFF POWERCARD EXPORT CORP.
By its attorneys,

John P. Connelly, BBO #546670
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

Dated: February 28, 2005

005143

7

## VERIFICATION

I, Dr. Gilbert D. Beinhocker, President of PowerCard Export Corp., hereby verify that the allegations in the Verified Complaint are true and accurate to the best of my knowledge and belief except as to those matters which, upon information and belief, I believe to be true.

Dr. Gilbert D. Beinhocker

Sworn to and subscribed before me
this 28th day of February, 2005.

Notary Public
My commission expires: 6/20/08

LYNNE A. FLEMING
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 20, 2008

8

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX .........., ss
[seal]

No.

## 05-0695

Powercard Export .........., Plaintiff(s)
Corp.

v.

Diebold, Incorporated ., Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ..... John P. Connelly ..........................

.......................................... plaintiff's attorney, whose address is .. Peabody & Arnold LLP,

30 Rowes Wharf, Boston, MA 02110 ......, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .... Cambridge, MA ...

.......................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** ~~~~~~ io, Esquire, at ..... Boston, Massachusetts ..........................

the .......................... Second .......................... day of .......................... March ..........................

.........................., in the year of our Lord .......... 2005 ...................... .

*Edward J Sullivan*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

M NO. SUF. — 001

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ...........................................................................................................

20........., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

.........................................................................................................................................................

.........................................................................................................................................................

.........................................................................................................................................................

                                              ...............................................................................

Dated: ...........................................................................................................

**N.B.  TO PROCESS SERVER:**
    **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
    ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( .........................................................., ......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.  05-0695

MIDDLESEX .........ss.

Powercard Export Corp.........Plff.

v.

Diebold, Incorporated ............Deft.

SUMMONS
(Mass. R. Civ. P. 4)

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CIVIL ACTION
NO. 05-0695

─────────────────────────────
POWERCARD EXPORT CORP.,              )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )
DIEBOLD, INCORPORATED,               )
                                     )
          Defendant.                 )
─────────────────────────────

> F I L E D
> IN THE OFFICE OF THE
> CLERK OF THE COURTS
> FOR THE COUNTY OF MIDDLESEX
>
> MAR 2 8 2005
>
> _Edward J. Sullivan_
> CLERK

## NOTICE OF FILING REMOVAL TO FEDERAL COURT

TO:    Mr. Edward J. Sullivan
       Clerk of the Court
       Middlesex Superior Court
       40 Thorndike Street
       Cambridge, MA 02141

PLEASE TAKE NOTICE that the Defendant in the above-captioned action, Diebold,

Incorporated, has filed in the United States District Court for the District of Massachusetts a

Notice of Removal in the above-captioned action, a copy of which is attached hereto as Exhibit A.

Dated: March 28, 2005

Respectfully submitted,

_____
Thomas E. Peisch, BBO # 393260
Jacob A. Labovitz, BBO # 646967
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
Telephone: (617) 482-8200
Facsimile: (617) 482-6444

_Attorneys for Defendant Diebold, Incorporated_

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the NOTICE OF FILING REMOVAL TO FEDERAL

COURT has been served by hand delivery and U.S. Mail, postage pre-paid, upon the following

counsel of record on this the 28th day of March, 2005:

John P. Connelly, Esq.
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110
(Attorneys for Plaintiff)

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: | Docket Number 05-0695 E |
|---|---|---|

| PLAINTIFF(S)  Powercard Export Corp. | DEFENDANT(S)  Diebold, Incorporated |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE John P. Connelly  546670 Peabody & Arnold LLP, 30 Rowes Wharf Boston 02110 Board of Bar Overseers number:  (617) 951-2100 | ATTORNEY  (if known) |
|---|---|

### Origin code and track designation

Place an x in one box only:
[ X ] 1. F01 Original Complaint (X)
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

| CODE NO. | TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) |
|---|---|
| | TYPE OF ACTION (specify)    TRACK    IS THIS A JURY CASE? |
| A101 | Contract    ( F )    (X ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
 1.  Total hospital expenses ............................................................ $.............
 2.  Total Doctor expenses ............................................................. $.............
 3.  Total chiropractic expenses ..................................................... $.............
 4.  Total physical therapy expenses .............................................. $.............
 5.  Total other expenses (describe) ............................................... $.............
B.  Documented lost wages and compensation to date ...........  Subtotal  $.............
C.  Documented property damages to date ..................................... $.............
D.  Reasonably anticipated future medical and hospital expenses .... $.............
E.  Reasonably anticipated lost wages .......................................... $.............
F.  Other documented items of damages (describe) ......................... $.............

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

 $.............

TOTAL: $.............

*[Stamp: FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE COUNTY OF MIDDLESEX MAR 01 2005 CLERK]*

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): claims for breach of contract, breach of implied covenant of good faith and fair dealing, interference with contractual relations misappropriation of confidential information and violation of G.L. c93A; claimed damages in excess of $10 million

TOTAL    $10 million

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 3/1/05

A.O.S.C. 2003

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CIVIL ACTION
NO.
**05-0695**



POWERCARD EXPORT CORP.,

Plaintiff,

v.

DIEBOLD, INCORPORATED,

Defendant.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAR 01 2005

CLERK

| | |
|---|---|
| 4966A000003/01/05CIVIL | 240.00 |
| 4966A000003/01/05SUR CHARGE | 15.00 |
| 4966A000003/01/05SECC | 20.00 |
| 4966A000003/01/05SUMMONS | 5.00 |

## VERIFIED COMPLAINT

### PARTIES

1.      The plaintiff Powercard Export Corp. ("PEC") is a Delaware corporation and with a principal place of business at 35 Corporate Drive, Suite 400, Burlington, Massachusetts.

2.      The defendant Diebold, Incorporated ("Diebold") is, upon information and belief, an Ohio corporation and with a principal place of business at 5995 Mayfair Road, North Canton, Ohio.  Diebold owns and operates several subsidiaries and divisions both in the United States and foreign countries, including, but not limited to, Diebold International, all of which subsidiaries and divisions are collectively referred to herein as "Diebold".  Diebold regularly does business in Massachusetts, and so this Court has jurisdiction over Diebold pursuant to G.L. c.223A, § 3.

### FACTS

3.      PEC was incorporated in December, 2002 as a small, start-up business integration catalyst company that was established solely to develop and implement automated teller machine ("ATM") market deployment strategies within the Russian retail market.  From January, 2003 to

1

July, 2004, PEC was a customer of Diebold, an international, multi-billion dollar company engaged, among other things, in the business of manufacturing and selling ATMs.

4.    During 2003, PEC's primary contract with Diebold was through Diebold's office in Marlborough, Massachusetts, including Gary Naresky, James Logan and Michael Roy. PEC's program was to bring to Russia an ATM based automated clearing house system that operated independently from banks. PEC's business model was designed after the NYCE model, which started as an ATM network in the United States and has evolved over the past twenty years from principally bank centric to retail centric. PEC's principals have had extensive experience conducting business in Russia, and PEC hired its own Russian staff, and obtained Russian partners, in order to implement its program.

5.    PEC entered into a Non-Disclosure Agreement with Diebold effective March 19, 2003 pursuant to which PEC provided to Diebold proprietary information concerning PEC's business plans and strategies, self-service usage, financing and information relating to integration activity, and information relating to PEC's contacts in Russia. Diebold delivered to PEC a deployment plan for ATMs manufactured by Diebold called Optevas, and on July 28, 2003 PEC entered into a consulting agreement with Diebold's subsidiary, Verdi & Company, to assist in the implementation of PEC's program.

6.    In August, 2003, Mr. Naresky from Diebold's office in Marlborough, Massachusetts prepared a Memorandum Of Agreement on Diebold's standard form for the sale of 498 Opteva 720s from Diebold to PEC for a purchase price of $14,505,131.20. This Memorandum Of Agreement was represented by Diebold to PEC as a valid purchase agreement. PEC signed the Memorandum Of Agreement on August 13, 2003 and returned it to Diebold, which accepted it without reservation. However, several months later, Diebold abruptly and

unilaterally transferred the matter to its European operation headed by Cliff Meinhardt, and Mr. Meinhardt thereafter informed PEC that Diebold would not perform under the terms of the Memorandum Of Agreement.

7.    Shortly before Mr. Meinhardt became involved for Diebold, PEC also entered into an agreement with Diebold's office in Marlborough, Massachusetts to purchase 160 used 1064ix ATMs for resale to STB Card, which was a Russian bank processing center with whom PEC was working closely at the time. PEC had entered into a resale agreement with STB Card for the used Diebold ATMs, which would have been a profitable transaction for Diebold, PEC and STB Card. However, Mr. Meinhardt wrongfully interfered with PEC's agreement with STB Card with his letter to STB Card dated October 28, 2003. In that letter, which Mr. Meinhardt sent without PEC's knowledge to PEC's customer, STB Card, Mr. Meinhardt stated that PEC was not authorized to resell the Diebold 1064ix ATMs to STB Card, which statement was false and made with the sole purpose and intent of harming PEC. STB Card cancelled its agreement with PEC because of Mr. Meinhardt's actions.

8.    Diebold received and accepted from PEC a memorandum of understanding whereby Diebold and PEC were to become equity partners in a new company ("NewCo") to be formed to originate and develop an automated clearing house ("ACH") national cash payment network based on Opteva 720 ATMs in Russia. Diebold modified that memorandum understanding whereby Diebold agreed to take a ten percent (10%) equity stake in NewCo. Diebold did so knowing that PEC would be taking that memorandum of understanding to potential investors, which in fact happened and in fact precipitated a firm commitment letter from Apex Emerging Markets Finance ("Apex") to bring $1.2 million in equity based on Diebold being identified as an owner and principal to NewCo under the terms of the

memorandum of understanding as modified by Diebold. Then at a much later date, after substantial time and expense incurred by PEC in reliance on the memorandum of understanding agreed to and modified by Diebold, Diebold tried to alter unilaterally its equity investment by replacing it with an onerous debt financing. Diebold did this knowing that it would cause the deal to fall through, which is what Diebold wanted so that it could appropriate for itself PEC's proprietary information.

9.    Diebold received a key PEC business plan at a presentation by Apex in Moscow in February, 2004. This was in addition to other substantial proprietary information which Cliff Meinhardt of Diebold received along with Diebold personnel in its Marlborough, Massachusetts office. Mr. Meinhardt received the benefit of valuable strategic analysis in marketing away from the traditional banking sector, along with detailed operating plans and proprietary documents from PEC's Russian partners in developing the retail ATM market. Mr. Meinhardt reneged on the promise which he had made to carry over the non-disclosure agreement to Diebold's Russian company which was previously signed by Diebold's American company.

10.    PEC introduced Diebold to a significant group of large size companies, such as Monsenergo-TransInvestbank, Russian's largest utility, which PEC believes Diebold's Russian operation has used, is using and will be using as a platform to sell ATMs to large Russian banks visiting to move into the retail ATM business. Diebold is doing all this to the great damage of PEC. On the other hand, Diebold introduced PEC to not one single contact.

11.    The damages incurred by PEC as a result of Diebold's wrongful actions are substantial. PEC's projected value of over $21,000,000 will never be realized due to the actions taken by Diebold. PEC's damages include its uncompensated time and expenses, value of

4

misappropriated proprietary information and lost market opportunities and profits, all due to the wrongful actions taken by Diebold towards PEC.

COUNT I
(Breach of Contract)

12. PEC repeats and realleges the allegations contained in paragraphs 1 through 11, supra.

13. The conduct of Diebold, as hereinbefore alleged, constitutes a breach of its contracts with PEC, including, but not limited to, non-disclosure contracts and contracts to sell equipment.

14. As a direct and proximate result of Diebold's breaches of contracts, PEC has suffered damages.

COUNT II
(Breach of Implied Covenant of Good Faith and Fair Dealing)

15. PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13 and 14, supra.

16. The contracts which PEC had with Diebold contained implied covenants of good faith and fair dealing.

17. At all times, PEC dealt fairly with Diebold and has not breached any of the contracts in any way.

18. Diebold's breaches of contract, interference with PEC's business and other relations and co-opting of PEC's proprietary information were in bad faith and were without cause, and were breaches of the implied covenant of good faith and fair dealing implicit in the contracts because Diebold sought to deprive PEC of accrued and earned benefits of those contracts.

19.    As a direct result of Diebold's breach of the implied covenant of good faith and fair dealing implicit in the contracts, PEC has been and continues to be deprived of accrued and earned benefits of those contracts.

COUNT III
(Interference with Contractual Relations)

20.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13, 14 and 16 through 19, supra.

21.    PEC had contractual and business relationships with Russian entities, including, but not limited to, STB Card, with the intended result of bringing economic benefit to PEC.

22.    Diebold had actual knowledge of PEC's contractual and business relationships with Russian entities, including, but not limited to, STB Card.

23.    Diebold intentionally interfered with those relationships, and as a result of Diebold's interference, PEC has been harmed and has incurred damages.

COUNT IV
(Misappropriation of Confidential Information)

24.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, supra.

25.    Upon information and belief, Diebold has disclosed or will disclose to others PEC's confidential information, and Diebold has used and is using PEC's confidential information.

26.    The disclosure and use of such information by Diebold is in violation of the Non-Disclosure Agreement entered into by and between PEC and Diebold, as well as a violation of statutory and common law.

<u>COUNT V</u>
(Violation of G.L. c.93A)

27.    PEC repeats and realleges the allegations contained in paragraphs 1 through 11, 13, 14, 16 through 19, 25 and 26, <u>supra</u>.

28.    Diebold is engaged in trade or commence as defined by G.L. c.93A, § 1.

29.    The actions of Diebold, as hereinbefore alleged, constitute unfair and deceptive acts or practices and unfair methods of competition on violation of G.L. c.93A, §§ 2 and 11 which have caused, and will have the effect of causing, PEC to suffer injury of its business.

30.    The use by Diebold of the aforesaid unfair and deceptive acts or practices and unfair methods of competition were, and are, willful and knowing violations of G.L. c.93A, thereby entitling to PEC to at least double, and up to treble, its damages, as well as reasonable attorneys' fees and costs.

WHEREFORE, PEC respectfully requests that this Court enter judgment for PEC and against Diebold in an amount to be determined at trial, which amount should be trebled pursuant to G.L. c.93A, §11, plus interest, costs and attorneys' fees, together with such additional or alternative relief as this Court deems to be just and proper.

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

PLAINTIFF POWERCARD EXPORT CORP.
By its attorneys,

John P. Connelly, BBO #546670
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

Dated:  February 28, 2005

605143

7

## VERIFICATION

I, Dr. Gilbert D. Beinhocker, President of PowerCard Export Corp., hereby verify that the allegations in the Verified Complaint are true and accurate to the best of my knowledge and belief except as to those matters which, upon information and belief, I believe to be true.

Dr. Gilbert D. Beinhocker

Sworn to and subscribed before me
this 28th day of February, 2005.

Notary Public
My commission expires: 6/20/08

LYNNE A. FLEMING
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 20, 2008

8

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

04/01/2005
11:28 AM

## MICV2005-00695
## Powercard Export Corporation v Diebold, Incorporated

| | | | | |
|---|---|---|---|---|
| **File Date** | 03/01/2005 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 03/28/2005 | **Session** | E - Cv E (7B Cambridge) | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | |
| **Lead Case** | | **Track** | F | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 05/30/2005 | **Answer** | 07/29/2005 | **Rule12/19/20** | 07/29/2005 |
| **Rule 15** | 07/29/2005 | **Discovery** | 12/26/2005 | **Rule 56** | 01/25/2006 |
| **Final PTC** | 02/24/2006 | **Disposition** | 04/25/2006 | **Jury Trial** | Yes |

**Plaintiff**
Powercard Export Corporation
35 Corporate Drive
Suite 400
Active 03/01/2005

**Private Counsel 546670**
John P Connelly
Peabody & Arnold
30 Rowes Wharf
7th floor
Boston, MA 02110-3342
Phone: 617-951-2100
Fax: 617-951-2125
Active 03/01/2005 Notify

**Defendant**
Diebold, Incorporated
Served: 03/22/2005
Served (answr pending) 03/22/2005

**Private Counsel 646967**
Jacob A Labovitz
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 04/01/2005 Notify

| Date | Paper | Text |
|---|---|---|
| 03/01/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 03/01/2005 | | Origin 1, Type A01, Track F. |
| 03/22/2005 | 2.0 | Affidavit of compliance with long-arm statute with proof of service on out of state defendant Diebold, Incorporated, March 8, 2005, Certified Mail, 5995 Mayfair Road, North Canton, OH 44720. |
| 03/28/2005 | 3.0 | Case REMOVED this date to US District Court of Massachusetts by the defendant, Diebold, Incorporated. |
| 03/28/2005 | | ABOVE ACTION THIS DAY REMOVED TO UNITED STATES DISTRICT COURT. |

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                 CIVIL ACTION
                                                 NO. 05-0695-E

POWERCARD EXPORT CORP.,

            Plaintiff,

v.

DIEBOLD, INCORPORATED,

            Defendant.

### AFFIDAVIT OF SERVICE OF PROCESS
### ON DEFENDANT PURSUANT TO G.L. C.223A, § 6

I, John P. Connelly, depose and state as follows:

1.      I represent the plaintiff Powercard Export Corp. in the above-referenced lawsuit.

2.      On March 3, 2005, pursuant to G.L. c.223A, § 6, I sent written notice of the filing

of the Verified Complaint together with a copy of the Verified Complaint and Summons by

certified mail, return receipt requested, to Michael J. Hillock, President of the defendant Diebold,

Incorporated ("Diebold"), 5995 Mayfair Road, North Center, OH 44720. Attached hereto as

Exhibit A is a true and accurate copy of the certified mail receipt indicating receipt by Diebold.

This Affidavit is made under the pains and penalties of perjury this 21ˢᵗ day of March,

2005.



                                    John P. Connelly

610194

1

**EXHIBIT A**





UNITED STATES POSTAL SERVICE

• Sender: Please print your name, address, and ZIP+4 in this box •

John Connelly
Peabody & Arnold LLP
30 Rowes Wharf, 6th Fl.
Boston, MA 02110-3342